Commonwealth of Pennsylvania, State Ethics Commission, Petitioner *v.* William E. Baldwin; Leo T. Forbidussi; Marshall Frumer; Donald F. Heggenstaller, Sr.; Edward Manherz; Catherine Masur; John T. Michaels; Ann L. Moss; Cleopatra Nelson; Julius Russell; Ann Socie; Edward Thompson; Bruce E. Waugh, Respondents.

Argued March 26, 1982, before Judge BLATT.

*Sandra S. Christianson,* General Counsel, with her *James J. Kutz,* Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for petitioner.

*Stuart J. Magdule, Adler, Nicholson, Claraval & Magdule,* for respondent, William E. Baldwin.

*James H. Stewart, Jr., Nauman, Smith, Shissler & Hall,* for respondents, Leo T. Forbidussi, Catherine Masur and Edward Thompson.

*Michael A. Etkin,* for respondent, Marshall Frumer.

*Bruce Manchester,* for respondent, Donald F. Heggenstaller, Sr.

*Anthony J. Vardaro,* for respondent, Julius Russell.

*David C. Raker,* for respondent, Bruce E. Waugh.

MEMORANDUM OPINION AND ORDER BY JUDGE BLATT, April 8, 1982:

The State Ethics Commission (Commission) challenges nomination petitions filed by 12 prospective candidates for the offices of state senator and state representative[1] on the grounds that affidavits sub-

---

[1] The respondents herein include: William E. Baldwin, candidate for state representative from the 125th District; Leo T. Forbidussi, candidate for state representative from the 36th District; Marshall

mitted with those petitions attesting that the candidate had filed financial interest statements with the Commission were false.

A hearing was held in this matter on March 26, 1982 at which the following respondents appeared either in person or through their respective attorneys: Respondent Baldwin; Respondent Forbidussi; Respondent Frumer; Respondent Heggenstaller; Respondent Manherz; Respondent Masur; Respondent Michaels; Respondent Moss; Respondent Russell; Respondent Thompson; and Respondent Waugh. Respondent Nelson, despite having received personal notice of these proceedings, was not herself present at the hearing, nor was she represented by counsel.

Under Section 4(b) of the Public Officials Ethics Act (Ethics Act), Act of October 14, 1978, P.L. 883, 65 P.S. §404(b), candidates for nomination for public office must file statements of financial interest with the Commission prior to filing their nomination petitions with the Bureau of Elections of the Department of State, and such nomination petitions may not be accepted unless they are accompanied by affidavits attesting that the financial interest statements have been

---

Frumer, candidate for state representative from the 154th District; Donald F. Heggenstaller, Sr., candidate for state representative from the 171st District; Edward Manherz, candidate for state representative from the 111th District; Catherine Masur, candidate for state senator from the 42nd District; John T. Michaels, candidate for state representative from the 35th District; Ann L. Moss, candidate for state representative from the 197th District; Cleopatra Nelson, candidate for state representative from the 149th District; Julius Russell, candidate for state representative from the 6th District; Edward Thompson, candidate for state representative from the 39th District; and Bruce E. Waugh, candidate for state representative from the 83rd District. The Commission had also filed an objection to the nomination petitions of Ann Socie for state senator from the 34th District but that objection was discontinued after Ms. Socie withdrew her name from the ballot.

filed with the Commission.[2] Failure to file such a statement prior to filing the affidavit required with the nomination petition would clearly invalidate the affidavit and also, consequently, the nomination petition, thereby requiring that the candidate's name be removed from the ballot. *Appeal of Robert C. Barlip,* 59 Pa. Commonwealth Ct. 178, 428 A.2d 1058 (1981); *see In re Petition of Cianfrani,* 467 Pa. 491, 359 A.2d 383 (1976).

At the hearing in this case, the Commission introduced evidence establishing that, while all of the respondents had filed their nomination petitions and accompanying affidavits with the Bureau of Elections on or before the deadline for such filings on March 9, 1982, the Commission had actually not received a statement of financial interest from any of them prior to or on that date.

The respondents argue generally that the Commission has neither standing nor statutory authority to bring this action and that it had made an invalid adjudication here in its holding that the respondents had violated the Ethics Act without affording them due process as required under its own regulations and by Section 504 of the Administrative Agency Law, 2 Pa. C. S. §504.

Section 4(b) of the Ethics Act sets out the requirement that a candidate who fails to file a financial interest statement with the Commission in the proper manner may not have his or her name placed on the

---

[2] Section 4(b) of the Ethics Act provides:

(b) Each candidate for public office shall file a statement of financial interests for the preceding calendar year with the commission prior to filing a petition to appear on the ballot for election as a public official. A petition to appear on the ballot shall not be accepted by an election official unless the petition includes an affidavit that the candidate has filed the required statement of financial interests with the commission.

ballot and may not take office or receive compensation from public funds for performing the duties of the office concerned. 65 P.S. §§404(b) and (d). We believe that there is a duty consequently imposed upon the Commission to ensure that proper filings are made, and we must therefore conclude that the Commission has the power and the standing to challenge nomination petitions in the manner utilized here so as to enforce the provisions of the Ethics Act in a timely fashion. And, of course, we believe that the Commission has standing to bring action here, for we have previously held that it has a direct interest in enforcing the mandates of the Ethics Act.[3] *See William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975).

Furthermore, we do not believe that the Commission's decision to file this suit constituted an adjudication of the respondents' rights without proper due process. It is true, of course, that the Commission's regulations require a confidential investigation and hearing in order to determine the existence of a conflict of interest under the Ethics Act. 51 Pa. Code §§2.31-2.41. We do not believe, however, that this provision is applicable here. This action is styled as an objection to nomination petitions which is permitted under Section 977 of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2937, and we would conclude that the Commission has authority either under its duty to enforce Section 4(b) of the Ethics Act or under its delegation of the parens patriae authority of the Office of the Attorney General

---

[3] Moreover, a letter dated March 15, 1982 was presented establishing that the Office of the Attorney General of Pennsylvania had delegated its authority to enforce the laws of the Commonwealth to the Commission so that it could initiate this litigation. Sections 204(c) and 403(a) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, 71 P.S. §§732-204(c) and 732-403(a).

of the Commonwealth, *see* footnote 3, to file the objections here concerned.

Having so disposed of the above procedural issues, we will now turn to the individual defenses raised by each of the respondents to the specific objections raised as to each nomination petition at issue here.[4]

RESPONDENT THOMPSON's defense to the objection to his nomination petition was based entirely upon his challenge to the Commission's authority, standing and procedures in bringing this action. Inasmuch as we have rejected those defenses and the Commission has established that Respondent Thompson did not file his financial interest statement in a timely manner, we will sustain the Commission's objection.

RESPONDENT NELSON failed to appear in this matter and so failed to refute the Commission's evidence that she did not file her statement of financial interest in a timely manner. We must therefore sustain the objection as to her nomination petition.

RESPONDENT FORBIDUSSI withdrew his nomination petition subsequent to the hearing, according to the Commission, which filed a request to discontinue this action as to his nomination petition. We have no reason to refuse this request and we will therefore order that this case be discontinued as to this particular respondent.

---

[4] The respondents also contend that the Commission was inconsistent in its enforcement of Section 4(b) of the Ethics Act because it challenged the petitions of only those candidates who did not file financial interest statements prior to the March 9 deadline, not of those candidates who filed such statements after they filed their nomination petitions but before the deadline. Although it seems to us that persons in the latter group would also be in violation of the specific provisions of Section 4(b) and we would disapprove any type of selective enforcement by the Commission, there was no evidence presented at the hearing that any candidates actually did file their statements between the filing of their petitions and the deadline and we will, therefore, reject this argument.

RESPONDENT BALDWIN maintains that he prepared his financial interest statement on March 4, 1981, at the same time that his other nomination papers, including his affidavit, were filled out and that all of the forms were then handed in his home office to a party worker who was to file them in the appropriate offices in Harrisburg. After being informed on March 16 that his financial statement had not been filed, he discovered his previously prepared form among other papers in his office and personally drove to Harrisburg on March 16 to file the statement with the Commission. He contends that his actions show his clear intent to comply with the requirements of the Ethics Act, an honest attempt to do so and a fulfillment of the purposes of the Ethics Act. While we do not question the Respondent's good intentions, we cannot accept his explanation as a justification for his failure to comply with the reporting requirements of the Ethics Act. The Act imposes a duty on candidates to file their financial interest statements prior to filing their nomination petitions, and we do not believe that a candidate can avoid this responsibility simply by asserting that a person upon whom he relied to complete the proper filings did not do so. We cannot therefore consider his financial interest statement to have been timely filed and we must sustain the Commission's objection to his nomination petition. *See Appeal of Robert C. Barlip.*

RESPONDENT MANHERZ testified that he relied upon the advice of a local party committeeman in not timely filing his financial interest statement. We believe that he acted in good faith, based upon information he received from a local party official, but he must take responsibility himself for the inaccuracy of that advice. His subsequent filing of the requisite statement on March 23 was not sufficient to meet the requirements of the Ethics Act and we must, therefore, sus-

tain the Commission's objection to his nomination petition.

RESPONDENTS FRUMER and RUSSELL assert that they both accomplished timely filings of their financial interest statements by mailing them to the post office box number designated by the Commission prior to the March 9 deadline: Frumer's secretary testifying that she did the mailing on March 2 and Russell testifying that he personally mailed his statement on March 5. Again, while we do not doubt the testimony introduced by these Respondents that their statements were mailed, we cannot hold that a mere mailing of financial interest statements to the Commission constitutes a filing thereof. In order to be properly filed, a statement, if mailed, must be actually received by the Commission or the candidate must at least produce some form of documentation of the mailing, such as a signed return receipt,[5] in order to establish not only the date of the mailing, but also the correctness of the mailing address used. We acknowledge that Commission regulations provide that a statement that is mailed before the filing deadline but is received by the Commission after that deadline will be considered to have been filed as of the date of the postmark. 51 Pa. Code §4.6. This regulation does not control here, however, where the statements were *never* received by the Commission and there is, consequently, no ascertainable postmark. We must therefore find that Respondents Frumer and Russell did not sustain their burden of proving timely filing of their statements of financial interest and we will also sustain the Commission's objections to their nomination petitions.

---

[5] It is true that the Commission considers ordinary mailing to be an appropriate and effective method of filing, but we believe that the candidates bore the burden to prove that such mailing actually occurred.

RESPONDENTS MICHAELS and MASUR contend that the packets of election papers which they received[6] did not contain copies of the financial interest forms which they were to prepare and that they thought that they had met all the statutory requirements once nomination petitions and affidavits with which they were furnished had been filed. It should be noted here that the candidate's affidavit, which attests that a financial interest statement has been filed, and the accompanying instructions regarding filing, do not *clearly* and *explicitly* set forth that the financial interest statement must be filled out and filed with the Commission on a *separate form*. The affidavit provides in pertinent part:

PART A—*CANDIDATE AFFIDAVIT* I do swear (or affirm) that my residence, my election district and the title of the office for which I desire to be a candidate are as specified above, that I am eligible for said office, and that I will not knowingly violate any election law or any law regulating and limiting nomination and election expenses, and prohibiting corrupt practices in connection therewith; that I am aware of the provisions of Section 1626 of the Pennsylvania Election Code requiring pre-election and post-election reporting of campaign contributions and expenditures; and unless I am a candidate for Judge of a Court of Record that my name has not been presented as a candidate by nomination petitions of any other party for the same office and if I am a candidate for any office of a political party, I further swear (or af-

---

[6] Respondent Michaels testified that he obtained his packet from the Allegheny County Board of Elections and Respondent Masur testified that her papers came from her local Republican party headquarters.

firm) that I am a registered and enrolled member of such party.

. . . .

PART C—*ETHICS AFFIDAVIT* and I swear (or affirm) that I have filed a statement of financial interest for the preceding calendar year with the State Ethics Commission as required by Act No. 1978-170.

And the instructions read:

6) CANDIDATE'S AFFIDAVIT AND ETHICS AFFIDAVIT: a) Candidates must sign and submit one CANDIDATE'S AFFIDAVIT per set of nomination petitions. The CANDIDATE'S AFFIDAVIT is printed on a separate form and can be obtained from the State Bureau of Elections, Room 305 North Office Bldg., Harrisburg, PA. 17120 b) Candidates for Senator or Representative in the General Assembly must sign and submit with their nomination petition an ETHICS AFFIDAVIT attesting to the fact that they have filed a Statement of Financial Interest with the State Ethics Commission. The ETHICS AFFIDAVIT is now part of the CANDIDATE'S AFFIDAVIT (See a) A separate ETHICS AFFIDAVIT is also available from the Ethics Commission.

The affidavit does, of course, set forth the requirement that a financial interest statement be filed but it appears that the instructions create an ambiguity by implying that the candidate's affidavit, the ethics affidavit and the financial interest statement are all part of the same document.[7] We do not believe, however, that such an ambiguity is in and of itself sufficient to

---

[7] We would suggest that the Department of State, Bureau of Elections re-evaluate the content of these instructions so that this ambiguity may be avoided in future elections.

relieve a candidate of his or her statutory duty to file in a proper manner, and candidates have a responsibility to educate themselves as to the requirements for being placed on the ballot. We must hold, therefore, that a candidate must show at least that he was *actively misled by election officials* as to the proper procedures to follow in order to justify his failure to comply with the Ethics Act. And, inasmuch as we cannot say that the failure of Respondents Michaels and Masur to receive the financial interest forms amounts to such active misguidance by election officials as to alleviate these Respondents of their inadvertence in not filing their statements, the objections to their nomination petitions must be sustained.

RESPONDENT WAUGH, on the other hand, asserts not only that the packet of materials which he obtained from officials at the Lycoming County Board of Elections contained no financial interest form, but also that the cover letter listing all of the materials which were enclosed in the packet and which were to be filed made no reference whatever to the requirement for a separate financial interest statement. He testified that his reading of the instructions led him to believe that the candidate's affidavit and financial statement were one and the same and that no additional filing was necessary. Respondent Waugh's interpretation of the candidate's affidavit and instructions which he received from election officials was certainly a reasonable one and we must agree that the content of the cover letter which he received acted to misdirect his actions and to support his belief that no additional financial statement was necessary.[8] We must conclude

---

[8] As was explained at the hearing, Respondent Waugh apparently received a cover letter and materials which were meant to be included in nomination packets for candidates who were only running for federal offices which are not subject to the financial disclosure requirements of the Ethics Act.

therefore, that the election officials were responsible here for causing the candidate to file his statement in an untimely manner[9] and we must overrule the Commission's objections to his nomination petition.

RESPONDENT Moss also contends that she was misled by election officials because she was told by an employee of her county board of elections in Philadelphia that her financial interest statement was to be filed with that board, and she therefore filed it there as directed on March 1. Additionally she maintains that she personally filed her nomination petition in Harrisburg early, on March 3, not being willing to trust the mails, but that, because the Commission provided only a post office box not an office address for filing purposes, she had not attempted to file her financial interest statement in Harrisburg and had followed the advice given in Philadelphia to file it there. We believe her failure to file her financial interest statement with the Commission was indeed the fault of election officials and not her own, and that, had she been properly advised, she would have filed as required. Although we cannot say that a county board of elections is per se an agent of the Commission, the Commission has entrusted such boards with responsibility for distributing the financial interest forms, and we must conclude that the inaccurate instructions given by the employees of the board of elections in Philadelphia, coupled with the previously discussed ambiguous instructions on the candidate's affidavit and the failure of the Commission to provide candidates with an actual office address where statements can be filed personally, induced the Respondent here to rely on the erroneous

---

[9] The Commission candidly admitted in its supplemental brief that it received the financial interest statement of Respondent Waugh on March 26, 1982, which was the date of the hearing in this matter.

advice of the Board.[10] The objection as to the Respondent's nomination petition will therefore be overruled.

RESPONDENT HEGGENSTALLER argues that he made a proper filing when he took his nomination petitions, his candidate's affidavit *and his financial interest statement* to the Bureau of Elections in the Department of State in Harrisburg for filing on March 2, 1982 and was told at that time that he had completed all the necessary procedures. Here, too, we believe that the Respondent did all he might be expected to do to meet the requirement of the Ethics Act, and that his failure to meet it was the fault of the election officials. He testified that the person acting for the Bureau of Elections specifically asked him whether or not he had filed his financial interest statement, *despite the fact that the said statement was lying on the counter directly in front of her* with all the other papers of Respondent. He replied affirmatively, thinking that the clerk in question was referring to his filing of a *copy* of his statement with his local board of elections in Centre County, which he had accomplished on March 1. The Commission itself evidently recognized the possibility that such situations might arise, and, on the three days preceding the deadline for filing nomination petitions, March 5, 8 and 9, it instituted the commendable practice of stationing a Commission official at the Bureau of Elections to ensure that the proper filings were made. We do not believe that Respondent Heggenstaller should suffer for an error committed by the Bureau of Elections which was foreseen by the Commission but not alleviated quickly enough to avoid the problem presented here. We will

[10] We must emphasize that merely filing the required statement with a county board of elections would not be sufficient to meet the mandate of the Ethics Act, but that the important consideration here is that the candidate's error was prompted by mistakes on the part of both the board and the Commission.

therefore overrule the Commission's objection to this Respondent's petitions.

Finally, we must congratulate the Commission for its foresight in anticipating potential problems which candidates might encounter in filing their financial interest statements and for establishing and improving the necessary procedures for implementation of the financial disclosure provisions of the Ethics Act. The fact that only 13 of the approximately 750 candidates who filed nomination petitions this year experienced difficulties with the reporting requirements speaks well for the Commission's efforts. It is evident, however, that the system has not as yet been perfected and that the Commission still has room to improve a number of its procedures, most notably the contents of the instructions concerning methods for filing financial statements and the coordination of filing methods between the Commission and other election officials such as the Bureau of Elections of the Department of State and the boards of elections in the various counties.

We will enter an order consistent with the foregoing opinion.

ORDER

AND Now, this 8th day of April, 1982, upon consideration of the objections filed to the nomination petitions of WILLIAM E. BALDWIN for the office of state representative from the 125th District, of MARSHALL FRUMER for the office of state representative from the 154th District, of EDWARD MANHERZ for the office of state representative from the 111th District, of CATHERINE MASUR for the office of state senator from the 42nd District, of JOHN T. MICHAELS for the office of state representative from the 35th District, of CLEOPATRA NELSON for the office of state representative from the 149th District, of JULIUS RUSSELL for the office of state representative from the 6th District and

of EDWARD THOMPSON for the office of state representative from the 39th District, it is ordered that said objections are sustained. The Secretary of the Commonwealth of Pennsylvania is directed to strike the above-listed names from the ballot for the May 18, 1982 primary election.

As to the objections filed to the nomination petitions of DONALD F. HEGGENSTALLER, SR. for the office of state representative from the 171st District, of ANN L. Moss for the office of state representative from the 197th District and of BRUCE E. WAUGH for the office of state representative from the 83rd District, it is ordered that said objections be overruled. The Secretary of the Commonwealth is directed to certify the above listed names to the proper officials for inclusion on the ballot for the primary election of May 18, 1982.

It is further ordered that this case be discontinued as to LEO T. FORBIDUSSI for the office of state representative from the 36th District.

The prothonotary is directed to notify promptly the parties hereto of this order and to certify a copy thereof to the Secretary of the Commonwealth.