494

625 A.2d 1279

In re Petition Objecting to the Nomination Petition and/or Papers of Elizabeth O. WILLIAMS as Democratic Candidate for the Office of District Justice for District 32–1–20 (9th and 11th Wards) for the Municipal Primary Election for the Year 1993. (Two Cases)

Appeal of Elizabeth O. WILLIAMS, Appellant. (Two Cases)

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 23, 1993.

Decided May 6, 1993.

Publication Ordered May 20, 1993.

Robert J. Sugarman, for appellant.

Michael P. Pierce, for appellee.

Before DOYLE, and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This is a consolidated appeal from an order of the Court of Common Pleas of Delaware County sustaining a challenge to Elizabeth Williams' nominating petitions for the office of District Justice, District 32–1–20, in the City of Chester. We reverse.

Williams cross-filed as a candidate for both the Democratic and the Republican party nominations for the office of District

Justice. The petitions contain 152 signatures and 120 signatures, respectively; 100 valid signatures being required for a qualifying petition.

The challenge petitions, filed by Michael Koterba and Spencer B. Seaton (Challengers), set forth general allegations [1] that "numerous signatures" are forgeries, not of registered electors, and that many persons who signed the petitions failed to insert pertinent data required by law. The challenge petitions also assert that this missing data was inserted by persons other than the registered electors who signed the nominating petitions. The challenge petitions, however, do not identify any specific pages or lines on the nomination petitions to which the general allegations are directed.

Williams filed a motion to quash the challenging petitions. After hearing, the trial court denied Williams' motion to quash

1. The Challengers' petitions state, in pertinent part:

8. Said Nomination Petitions and/or Papers are illegal, improper, invalid and defective in that they do not contain the aforesaid minimum number of valid signatures of qualified registered electors of the City of Chester for the following reasons:

(a) Numerous signatures are forgeries, which will be proven at a hearing on this Petition; and

(b) Numerous signatures are of persons who are not registered electors in the City of Chester; and

(c) Numerous signatures are of persons who are not registered Republican electors in the district; and

(d) Many of the persons who signed same did not insert his or her proper voting address as required by law; and

(e) Persons who signed same did not properly list his or her occupation as required by law; and

(f) Persons who signed same did not properly insert the date of signing as required by law; and

(g) Persons who signed same did not use the signature under which he or she was registered to vote as required by law; some persons signed same twice; and

(h) Persons who signed same did not insert the name of the City, Township or Borough before or after his or her address as required by law; and

(i) The occupations, address including the name of the city, township or borough and/or the dates of signing were forged by persons other than the registered electors who signed his or her signature thereto; and

(j) Each candidate's signature cannot be counted in computing his or her total signatures.

and granted the challenge petitions, determining that there were extensive irregularities on the nominating petitions. This resulted in an insufficient number of signatures to support the nomination.

On appeal, Williams argues that *Petition of Bishop*, 525 Pa. 199, 579 A.2d 860 (1990), is the controlling law and that the trial court erred in reaching the evidentiary stage at hearing because the challenging petitions lacked specificity. Williams also argues that the Cahllengers had no standing to challenge the Democratic petition and that the two-year purge conducted by the Office of Voter Registration violates Section 37 of the Act of April 29, 1937 (Act of 1937), P.L. 487, *as amended,* 25 P.S. § 951-37.

Initially, we note that challenges to nomination petitions must overcome the presumption of validity. Moreover, the Election Code is to be liberally construed so that candidates running for office are not deprived of that right nor are voters deprived of their right to elect the candidate of their choice. *Smith v. Brown,* 139 Pa.Commonwealth Ct. 304, 590 A.2d 816 (1991).

We first address Williams' argument that the Challengers lacked standing to challenge her Democratic party nominating petition. Two cases, *In re Pasquay,* 105 Pa.Commonwealth Ct. 532, 525 A.2d 13, *aff'd,* 515 Pa. 453, 529 A.2d 1076 (1987) and *In re Pinckney,* 105 Pa.Commonwealth Ct. 536, 524 A.2d 1074, *appeal denied,* 515 Pa. 589, 527 A.2d 548 (1987), indicate that in a primary election a member of an opposing party does not have standing to challenge the nomination petition of a candidate in another party's primary election. These holdings are based on a recognition that "any person who is registered to vote in a particular election has a substantial interest in obtaining compliance with the election laws by any candidate for whom that elector may vote in that election." *Pasquay,* 105 Pa.Commonwealth Ct. at 535, 525 A.2d at 14 (quoting *In re Barlip,* 59 Pa.Commonwealth Ct. 178, 182, 428 A.2d 1058, 1060 (1981)).

■ The Challengers here are registered Republicans. As such, they have standing to challenge Williams' Republican party primary nomination petition. They do not have standing to challenge her Democratic party primary nomination petition.

■ With regard to Williams' next argument, she contends that any purge notices, which affected the registered voters who signed her nominating petitions, were sent out by the Office of Voter Registration in December, 1992, and thus violated Section 38 of the Act of 1937. Section 38 states in pertinent part:

> *Within three months after January 1 of each year*, . . . the Registration Commission shall cause all of the district registers to be examined, and in the case of each elector who has been registered for a period of at least two immediately preceding calendar years and who is not recorded as having voted at any election or primary during said period, the Commission shall send to such elector by mail, at his address appearing upon his registration card, a notice setting forth that the records of the Commission indicate that he has not voted during the two immediately preceding calendar years and that this registration will be cancelled or suspended at the expiration of the thirty days. . . .

Without informing this Court that *In re Johnson*, 102 Pa.Commonwealth Ct. 143, 516 A.2d 1293, *rev'd* 509 Pa. 347, 502 A.2d 142 (1985), had been reversed, the Challengers cite to *Johnson* for the proposition that signatures on a candidate's nominating petition, if purged from the voting registration files, were invalid and could not be counted as among the necessary signatures. This statement of law is correct, but in reversing *Johnson* the Supreme Court held that the entire purge process must be completed prior to the signing of the petition or the signature will be considered valid. However, the *Johnson* case does not address the validity of the purge procedure. Since the purge notices here were sent out in December, 1992, and not within three months following the first of January, as required by the Act of 1937, they are invalid.

Lastly, we address the specificity issue. Section 977 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2937, governs objections to nomination petitions. This section states:

> All nomination petitions and papers received and filed within the periods limited by this Act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court *specifically setting forth the objections* thereto, and praying that the said petition or paper be set aside.

The court in *Bishop* directly addressed this issue. It indicated that the use of mere boilerplate allegations, rather than specific objections, does not comply with the requirements of the Election Code. The *Bishop* court stated "there is nothing in the Code that permits the challenger to file a general set of objections and then supplement those objections with more detailed claims after the time limit has run." *Id.* at 203, 579 A.2d at 862. The *Bishop* court also indicated that the purpose of the statute "is to give fair notice to the person seeking a nomination that his petition contains improper signatures (or other deficiencies) and provide that person with enough information to mount a defense to the challenge." *Id.* at 203–04, 579 A.2d at 862–63. In fact, the holding in *Bishop* could not be more clear. "[I]f the challenger claims that any signature on the petition is invalid, he must cite the page, line and reason for the invalidity in his petition to challenge. Therefore, the failure to comply with this requirement will render the challenge fatal." *Id.* at 204, 579 A.2d at 863.

The trial court attempts to distinguish *Bishop,* indicating that the factual circumstances here differ from the *Bishop* case in that the *Bishop* objections were insufficient to set aside the nominating petition regardless of whether the specificity requirements were satisfied. This factual difference is of no moment. *Bishop* relied on two prior cases that held that amendments to petitions made after the seven day time limit could not cure a lack of specificity. *In re Wagner,* 510 Pa. 584, 511 A.2d 754 (1986); *Appeal of Beynon,* 370 Pa. 532, 88 A.2d 789 (1952). The court must first determine whether the

allegations raised by the challenger comply with the Election Code before examining the nominating petition for errors. Without the specificity set forth as required of the challenger, the potential candidate cannot be prepared to defend his or her nomination petition nor can the information on the nominating petition be examined for noncompliance.

The allegations made by Challengers did not advise Williams of what proof she must be prepared to present at the hearing. This failure to specify the names by page and line to which the challengers intended to object, fatally flaws their challenge petitions. Therefore, the trial court's denial of the motion to quash and its granting of the Challengers' petitions must be set aside.

Accordingly, we reverse the trial court's decision.

## ORDER

AND NOW, this 6th day of May, 1993, the orders of the Court of Common Pleas of Delaware County entered in the above-captioned matters on March 24, 1993 are hereby reversed. The name of Elizabeth O. Williams shall appear on the May 18, 1993 primary ballots for both the Republican party's nomination and the Democratic party's nomination for the Office of District Justice for District 32–1–20.

SMITH, J., dissents.